KINGS COUNTY.—HON. A. H. DAILEY, SURROGATE.—September, 1879.

LAWRENCE *v.* LAWRENCE.

*In the matter of the final accounting of the executors, &c., of* HENRY LAWRENCE, *deceased.*

The will ·of the testator provided that any advancements made to any child, and evidenced by entries in the testator's books of account, should be deducted from such child's share. The testator kept no private books. Upon the books of his firm appeared entries, charging several of his children with large amounts. Later entries on the credit

side of the same accounts balanced these charges. It appeared by evidence *aliunde* the books, that the original entries on the debit side were made by the testator with the intention of having them charged against his children as advances. It also appeared that the subsequent credit entries were made by the testator in view of the provisions of his will, and with the intention of avoiding the effect of the debit entries as advancements, and with the purpose of canceling them.

*Held*, that the books of the firm were the books referred to by the testator in his will, as his books, and that the debit entries therein against his children, taken with the evidence *aliunde* the books, constituted advancements according to the provisions of the will. But, *held further*, that the subsequent credit entries, taken in connection with evidence *aliunde* the books, destroyed the effect of the debit entries as evidence of advances as contemplated by the will, and changed them into gifts.

FINAL accounting of executors of the will of Henry Lawrence, deceased, which was admitted to probate April 1, 1872, by the Surrogate of Kings County. The will contained the following provisions, viz. :

" *Third.* I give and bequeath to my daughter Eliza, wife of David Lindsay, if living at my death, the sum of ten thousand dollars.

" *Fourth.* I give and bequeath to my son Samuel, if living at my death, the sum of fifteen thousand dollars.

" *Fifth.* I give and bequeath · to my son Frank, if living at the time of my death, the sum of ten thousand dollars.

" *Ninth.* All the rest, residue and remainder of my estate, real and personal, whatsoever and wheresoever, I give, devise, and bequeath to my sons, Samuel and Frank, and to my daughters, Eliza and Annie, to be divided equally between them.

" *Tenth.* It is my will, and I hereby direct that any advancements hereafter made by me, to or for account of my said children or either of them, and evidenced by either entries in my books of account, or by any written

memorandum of acknowledgment signed by such child or children, shall be deducted from the amount, or be charged upon the share or portion, as the case may be, to which such child or children respectively would be entitled under the provisions of this, my will, if no such advancement had been made."

The executors made and filed their account in June, 1875, and on the 1st day of July Eliza Lindsay, wife of David Lindsay, one of the legatees and heirs of the deceased, filed objections to the account, that the executors had not charged the legatees with advances made to them by the testator, and directed to be charged by the will to the legatees named therein, to wit, Samuel Lawrence, about $12,287, and Frank Lawrence, about $10,551.

The objections and testimony were first heard before Surrogate VEEDER, and under his decision, the objections were sustained.

The General Term of the Supreme Court affirmed the decree, but the Court of Appeals reversed it upon the ground, as stated in the opinion of the court, that the books of account, which contained certain entries which the court admitted in evidence upon the hearing, and upon which alone the court deemed it sufficient to charge these legatees with advancements, were not to be taken as true in the absence of evidence *aliunde*, in connection with the books. Accordingly a rehearing was had before Surrogate VEEDER, and evidence taken, but no decision rendered. Further facts appear in the opinion.

THE SURROGATE.—It appears from the testimony that the testator kept no individual books of account, but

the firm of Henry Lawrence and Sons, of which he was a leading member, kept books of account, and these books contained, under date of December 30, 1871, the following charges against Henry Lawrence, the deceased testator.

1871.
Dec. 30. Henry Lawrence, Dr. . . . $13;871.89

   "   To Samuel Lawrence, for amount
          charged, . . . . . . $2,287.00
   "      Frank Lawrence, . . . . 10,551.57
   "      Mrs. Lindsay, . . . . . 1,033.32

                        $13.871.89

Under the same date and in the same books, Samuel Lawrence is credited as follows :

1871.
Dec. 30. By Henry Lawrence, . . $2,287.00

Also, under same date, Frank Lawrence is credited as follows :

By Henry Lawrence, . . . . . $10,551.57

Also, under same date, Eliza Lindsay is credited as follows :

By Henry Lawrence, . . . . . . $1,033.32

These books contain charges against each of these three legatees to cash received prior to the date of the several amounts placed as above to their credit, and these amounts were either afterwards drawn by them, or they went to balance the charges against them, so they unquestionably all received the benefit of these credits, at

or subsequent to the 30th of December, 1871. Two other entries also appear, under date of May 2, 1870, as follows: "Samuel Lawrence, currency (at the time he got the check), $50 ; Henry Lawrence (chk. for Samuel Lawrence), $10,500." These items are charged to the testator on the journal, under date of May 31, 1870. Are these several items advancements under this will ? The Court of Appeals, in its opinion, has relieved me from considering some of the questions presented. The firm's books of account are held to have been intended by the testator as his books of account, as he is shown to have had no separate books containing an account of his transactions. To show that these entries were intended by the testator as advancements, the proctor for Mrs. Lindsay, called as a witness Mr. Seabury Lawrence, one of said firm, and son of the testator. The substance of his testimony is, that the bookkeeper of the firm, Mr. Foster, made all the entries in the books, and the particular entries in question of credits to these legatees were made by the direction of the testator, and the amounts paid were gifts or advancements. The sums were paid by the firm, but were charged to the individual account of the testator, by his express directions. By his testimony, which is uncontroverted, it appears that shortly before his decease the testator came into the office of the firm, and said to the witness, who was the testator's confidential manager, one day shortly previous to his death, feeling unwell, referring to the will he said : "As matters stand, Frank and Sam won't be likely to have much, owing to their losses in business," and he thought the charges against them on our books better be charged to him to his individual account, and the account

balanced, so there would not be anything appear against the children on the books of the firm.'' He directed this to be done, and the bookkeeper accordingly was directed to cancel the accounts against these children, so that nothing should appear upon the books, that these children had received anything from their father. He made special reference to the tenth clause of the will, showing clearly that he was fully aware that, under that clause, the charges upon the books of the firm against these children were advances made by him to them, and if left in their then present condition, must be deducted from their respective shares. Aside from this, it is quite conclusively shown that these several charges, the subject of this controversy, were for money paid by the testator's order to them, and that he was fully aware of the nature and extent of their several accounts, and what would be the result, if left at his decease as they then stood. I am therefore forced to find, that at the time the entries were made, and money received by these children from their father at the hands of the firm, they were intended as advancements, and these entries, together with what has now been proved by the witness, Mr. Seabury Lawrence, to my mind conclusively shows the entries to have been intended by the testator at the time, as evidence required by the will, to make them charges against the shares of these children. He certainly believed such to be the case, else why direct their cancellation, to prevent the effect of that clause of the will? But whilst finding this as to the original entries as they then stood, what has been the effect of the testator's causing these several amounts to be charged directly to him, and his crediting them with cash, thus balancing these accounts?

It was his undoubted purpose to relieve these children from the effect of the tenth clause of the will, and if I can find a way to legally carry out that intention, it is my duty to do so.

The testator intended by his will to distinguish between gifts and advancements, by providing that, to constitute an advancement, it must be evidenced by entries on his books of account, or by some written memorandum signed by the legatee to be charged. Having thus by his will declared what shall be evidence of an advancement, he cannot by parol or any instrument in writing, short of another will, or a codicil duly executed as a will, relieve these legatees from the effect of that provision. To hold otherwise would be adverse to one of the best-settled principles of law, adverse to the statute relating to wills. The only relief for these legatees to be found, if any, must be in the effect of the credit given by the testator, on these books, to balance the charges in question, and thus in effect make these advancements gifts. As a matter of fact he endeavored to avoid the effect of this evidence, and treat these advancements as gifts by his own act on the books, without anything being paid by either of these legatees to entitle them to the credits given. If these children had repaid the advancements made, they would have been canceled, for it would, in effect, have converted them into debts, in fact, as they apparently were on the books, and the acceptance of the amount by the testator would have had the effect of canceling them. But may he not do the same thing in effect, without anything passing from them to him? Without the evidence of Mr. Seabury Lawrence, the entries tended to show

advances; with his evidence it shows that the charges against them were, in fact, advances at the time, but it also shows that the credits placed to their account by the testator were with the express intent to cancel them, and convert them into gifts or balanced accounts. This was his direction to his son and bookkeeper. Can it now be said that these entries and this testimony establish a case of such advances as, under the tenth clause of his will, are evidenced by entries in his books of account? As well might it be said that charges against A., balanced by payments on the same page, are evidence of indebtedness to B.

These transactions must be judged in the light of the entries as they now stand, and the evidence before us. I am inclined to the opinion, that if the testator's directions had been entirely disobeyed, and no changes been made, and he had died believing the accounts had been canceled, the effect would be the same as if the accounts had been erased from the books. His directions and efforts were not to change his will, but destroy what might be evidence of his own acts, to favor his sons, who had been unfortunate in business.

A gift in view of death is revocable at the arbitrary will of the donor, and this, notwithstanding the donee has been put in full possession of the subject of the gift. (Merchant v. Merchant, 2 Bradf., 432.) If he can revoke a gift, can he not also revoke, before his death, these advances, and make them gifts? In the case of Langdon v Astor (16 N. Y., 52), the court says: "A man cannot, by will or by any other instrument in whatever form, or with whatever solemnity executed, either limit or control his power of subsequently, in his life-

time, disposing of his own property, or prescribing the forms by which it must be done to be effectual."

I therefore decide that these entries as they now stand, with the evidence before me uncontroverted, of the intentions of the testator, in directing their cancellation, are not such evidence of advances as is contemplated by the will, and the amount so received, are not to be deducted from the shares of these sons of the testator, Samuel and Frank Lawrence, and another.

Ordered accordingly.